## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | |
|---|---|
| **JOSÉ ALBERTO HERNÁNDEZ LARA, ISMAEL LORENZO PEREZ, LEONEL SANTIAGO GÓMEZ, and URIEL HERNÁNDEZ ESPINOZA,**<br><br>*Plaintiffs,*<br><br>*v.*<br><br>**LAS PRINCESAS CORPORATION, MARTHA ZEFERINO JOSÉ, TANKARD FARMS, LLC, and THE TANKARD NURSERIES INC.**<br><br>*Defendants.* | Civ. Action No.:<br><br>**CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>Jury trial demanded |

### PRELIMINARY STATEMENT

1.     Plaintiffs José Alberto Hernández Lara, Ismael Lorenzo Perez, Leonel Santiago Gómez, and Uriel Hernández Espinoza ("Plaintiffs") and other similarly situated workers are migrant agricultural workers who were brought to the United States to work on H-2A visas by Defendants Las Princesas Corporation ("Las Princesas") and Martha Zeferino José (collectively, "Las Princesas Defendants").

2.     Plaintiffs and the members of the classes they seek to represent left behind their families in their home countries and spent considerable time, effort, and expense to come to the U.S. and perform labor under difficult conditions. Despite this, Defendants failed to pay these workers for all their hours worked, failed to pay workers the contractually agreed upon wage rate, and failed to reimburse travel and visa expenses. The Las Princesas Defendants even retained the

passports of Plaintiffs and other workers and took other actions to prevent the workers from leaving Las Princesas's control, in violation of state and federal human trafficking laws.

3.      Because of this treatment by Defendants, Plaintiffs now file this action on behalf of themselves and other similarly-situated workers to secure and vindicate their rights under the Fair Labor Standards Act ("FLSA"); the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"); the Trafficking Victims Protection Reauthorization Act ("TVPRA"), the North Carolina Human Trafficking Law; the North Carolina Wage and Hour Act ("NCWHA"); the Virginia Wage Payment Act ("VWPA"); and the Virginia Overtime Wage Act ("VOWA"). Plaintiffs also bring claims under North Carolina and Virginia common law.

4.      Three of the named Plaintiffs in this action – along with other workers – were placed at and worked for Defendant Tankard Farms LLC and/or The Tankard Nurseries, Inc. (collectively, "Tankard"), a nursery located in Northampton County, Virginia. Three of the named Plaintiffs – along with others similarly situated – were placed at and worked for farms in North Carolina. One of the named Plaintiffs – along with other workers recruited by Las Princesas - ultimately worked in Florida as well. This case is brought on behalf of all workers recruited by the Las Princesas Defendants, whether they worked in Virginia, North Carolina, or Florida.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 (federal question) because this action arises under the TVPRA, 18 U.S.C. § 1595(a), the FLSA, 29 U.S.C. § 201 *et seq.*, and the AWPA, 29 U.S.C. § 1854 (a)*, et seq.*

6.      The Court may exercise supplemental jurisdiction over Plaintiffs' pendent state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction), as the state claims form part of the same case or controversy as Plaintiffs' federal claims.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district, and because Defendants do business here.

8.      The Norfolk Division is the proper division because a substantial part of the events or omissions giving rise to this Complaint occurred in this division. *See* Local Rule 3(B)(2).

## PARTIES

### PLAINTIFFS

9.      José Alberto Hernández Lara is an individual who was employed by Tankard and the Las Princesa Defendants in 2021. He worked in both Virginia and North Carolina.

10.     Ismael Lorenzo Perez is an individual who was employed by Tankard and the Las Princesa Defendants in 2021, and by the Las Princesas Defendants in 2022. He worked in Virginia, North Carolina, and Florida.

11.     Leonel Santiago Gómez is an individual who was employed by the Las Princesas Defendants in 2022. He worked in North Carolina.

12.     Uriel Hernández Espinoza is an individual who was employed by Tankard and the Las Princesa Defendants in 2022. He worked in Virginia.

13.     Seasonally, Plaintiffs José Alberto Hernández Lara, Ismael Lorenzo Perez, Leonel Santiago Gómez, Uriel Hernández Espinoza, and others similarly situated were, at relevant times, H-2A agricultural guest workers admitted into the United States to work under the auspices of the H-2A program, 8 U.S.C. §§ 1188, *et seq.,* and 20 C.F.R. §§ 655.0-655.185.

14.     At certain times relevant to this Complaint, Plaintiffs José Alberto Hernández Lara, Ismael Lorenzo Perez, and Leonel Santiago Gómez and others similarly situated (the "AWPA Plaintiffs") were migrant agricultural workers within the meaning of the AWPA.

15.     The native language of most Plaintiffs and members of the putative FLSA collective and Rule 23 classes alleged in this Complaint is Spanish; most, if not all, Plaintiffs and members of the putative collective and class action do not fluently speak or read English.

16.     At all times relevant to this Complaint, Plaintiffs and others similarly situated were employees of the Las Princesas Defendants and/or Tankard within the meaning of the FLSA, 29 U.S.C. § 203(e).

17.      At all times relevant to this Complaint, Messrs. Hernández Lara, Lorenzo Perez, and Santiago Gómez and the members of the classes they seek to represent were employed by the Las Princesas Defendants within the meaning of N.C. Gen. Stat. §§ 95-25.2(3) and (4) and 29 U.S.C. § 203(g).

18.     At all times relevant to this Complaint, Mr. Hernández Espinoza, Mr. Hernández Lara, Mr. Lorenzo Perez, and the members of the classes they seek to represent were employed by Defendants within the meaning of Va. Code § 40.1-29 and 29 U.S.C. § 203(g).

19.     Upon information and belief, the Plaintiffs and their similarly situated co-workers were individually engaged in commerce or in the production of goods for commerce.

DEFENDANTS

20.     At all times relevant to this action, Las Princesas Corporation was and is a corporation that maintains a principal place of business at 414 Hackney Ave., Washington, NC 27889.

21.     Martha Zeferino José ("Ms. Zeferino") is the President and day-to-day manager of Las Princesas, as well as Las Princesas's registered agent. Ms. Zeferino resides in North Carolina.

22.     In all years relevant to this action, upon information and belief, Las Princesas had annual gross sales in excess of five hundred thousand dollars ($500,000).

23. Tankard Farms, LLC, is a Virginia limited liability company whose registered address is 4517 Bayside Road, PO Box 649, Exmore, VA 23350.

24. The Tankard Nurseries, Inc. is listed as the "name of agricultural business" in H-2A Agricultural Clearance Orders that certain Plaintiffs and others worked under.

25. According to its website, Tankard is a wholesale nursery serving the Northeast and Mid-Atlantic states.

26. Ed Tankard is the President and day-to-day manager of Tankard.

27. C. Arthur Robinson II is Tankard Farms LLC's registered agent.

28. At all times relevant to this action, Defendants have been employers of Plaintiffs and other similarly-situated workers employed under the terms of their relevant job orders as defined by the H-2A regulations, 20 C.F.R. § 655.103(b). At all times relevant to this Complaint, Defendants had places of business in the U.S. and means by which they could be contacted for employment, had employer relationships with the Plaintiffs and other similarly-situated workers, and had valid Federal Employer Identification Numbers.

29. At certain times relevant to this action, the Las Princesas Defendants have been employers of Mr. Hernández Lara, Mr. Lorenzo Perez, Mr. Santiago Gómez, and others similarly situated within the meaning of the NCWHA.

30. At certain times relevant to this action, all Defendants have been employers of Mr. Hernández Lara, Mr. Lorenzo Perez, Mr. Hernández Espinoza, and others similarly situated within the meaning of the VWPA. Mr. Hernández Lara, Mr. Lorenzo Perez, Mr. Hernández Espinoza and others similarly situated all worked for Tankard in Virginia.

31.     At certain times relevant to this action, the Las Princesas Defendants have been employers of Mr. Hernández Lara, Mr. Lorenzo Perez, Mr. Santiago Gómez, and others similarly situated within the meaning of the AWPA.

32.     At all times relevant to this action, all Defendants have been employers of Mr. Hernández Lara, Mr. Lorenzo Perez, Mr. Santiago Gómez, Mr. Hernández Espinoza, and others similarly situated within the meaning of the FLSA. Mr. Hernández Lara, Mr. Lorenzo Perez, Mr. Hernández Espinoza and others similarly situated all worked for Tankard in Virginia.

33.     Defendant Tankard and the Las Princesa Defendants were each enterprises engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 203(s), in that they had "employees engaged in commerce or in the production of goods for commerce, or . . . [had] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person."  They both had "an annual gross volume of sales made or business done" of not less than $500,000 exclusive of excise taxes at the retail level that were separately stated.

## STATEMENT OF FACTS

### THE H-2A PROGRAM

34.     The H-2A visa program is a nonimmigrant visa program that allows companies to bring workers to the United States to perform agricultural jobs on a temporary, seasonal basis. *See* 8 U.S.C. § 1188; 20 C.F.R. § 653.500.

35.     In order for an agricultural employer to use the program, the United States Department of Labor ("U.S. DOL") must, based on information provided to it by the employer, certify that (1) there are not enough U.S. workers to perform the job and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are

similarly employed. 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 8 U.S.C. § 1188(a)(1).

36.    Employers must file a temporary labor certification application with the U.S. DOL's Employment and Training Administration. 20 C.F.R. § 655.130. The application includes an H-2A Agricultural Clearance Order (ETA-790A) ("job order") that complies with the requirements of 20 C.F.R. § 655.122. The job order contains the terms to be offered to both foreign H-2A workers and domestic workers throughout the United States. *See* 20 C.F.R. § 655.121(a)(2).

37.    Employers seeking to employ H-2A workers must agree to abide by all the requirements contained in the H-2A regulations. 20 C.F.R. Part 655, Subpart B.

38.    The terms and conditions of the job orders, together with the requirements of 20 C.F.R. Part 655, constituted employment contracts for Plaintiffs and others similarly situated. *See* 20 C.F.R. § 655.103(b) (definition of "work contract").

39.    Once the job order is approved, the employer files an Application for Temporary Employment Certification ("employment certification") with the National Processing Center of the U.S. DOL Office of Foreign Labor Certification. 20 C.F.R. § 655.130.

40.    As part of the certification process, employers must attempt to recruit U.S. workers. 20 C.F.R. §§ 655.153, 655.154.

41.    If the employer cannot fill the positions with U.S. workers, only then can they recruit foreign workers.  *See* 20 C.F.R. § 655.161.

42.    H-2A employers are required to pay employees at least the Adverse Effect Wage Rate ("AEWR"), the regional weighted average hourly wage rate for field and livestock workers combined, as measured by the Department of Agriculture's annual Farm Labor Survey of non-supervisory farm and ranch workers.

THE H-2A JOB ORDERS

43.    In each year relevant to this Complaint, from 2021 through to the present, the Las Princesas Defendants brought H-2A workers under job orders to plant, harvest, and pack produce, flowers, and other agricultural products in North Carolina and/or Virginia.

44.    For the 2021 and 2022 growing seasons together, the Las Princesas Defendants filed at least ten (10) job orders seeking approximately 219 H-2A workers for various spans of time.

45.    For the 2023 growing season, the Las Princesas Defendants filed at least eight (8) job orders seeking approximately 111 H-2A workers for various spans of time.

46.    For the 2024 growing season to date, the Las Princesas Defendants filed at least five (5) job orders seeking approximately seventy-one (71) H-2A workers for various spans of time.

47.    Upon information and belief, the Las Princesas Defendants jointly employed approximately the same number of H-2A workers that they were certified to employ, along with any applicable farms or nurseries, such as Tankard.

48.    The job orders for which the Las Princesas Defendants sought workers for are the following:

| Job Order Number | # H-2A Workers Certified | Start Date | End Date | State | Additional Employers | Adverse Effect Wage Rate |
|---|---|---|---|---|---|---|
| H-300-21039-062456 | 25 | 04/09/2021 | 05/15/2021 | NC | The Terra Ceia Farms, LLC | $12.67 |
| H-300-21096-200373 | 6 | 06/14/2021 | 10/01/2021 | NC | Williams Farms | $13.15 |
| H-300-21116-257364 | 8 | 06/15/2021 | 10/15/2021 | NC | Grissom Farms | $13.15 |

| | | | | | | |
|---|---|---|---|---|---|---|
| H-300-21217-503735 | 25 | 10/04/2021 | 12/17/2021 | VA | Tankard Nurseries, Inc. | $13.15 |
| H-300-22003-803116 | 25 | 03/15/2022 | 12/16/2022 | VA | Tankard Nurseries, Inc. | $14.16 |
| H-300-22034-874840 | 49 | 04/04/2022 | 05/06/2022 | NC | Dual Venture Farms, Inc. | $14.16 |
| H-300-22034-876154 | 25 | 04/14/2022 | 05/12/2022 | NC | The Terra Ceia Farms, LLC | $14.16 |
| H-300-22068-962914 | 24 | 05/12/2022 | 07/04/2022 | NC | Morris Blueberry Farms | $14.16 |
| H-300-22077-990547 | 20 | 05/25/2022 | 07/10/2022 | NC | Mattamuskeet Fresh Produce, LLC | $14.16 |
| H-300-22192-343227 | 12 | 09/24/2022 | 11/09/2022 | NC | Mattamuskeet Fresh Produce, LLC | $14.16 |
| H-300-23004-680224 | 24 | 3/20/2023 | 12/15/2023 | VA | Tankard Nurseries, Inc. | $14.91 |
| H-300-23004-680407 | 1 | 3/20/2023 | 12/15/2023 | VA | Tankard Nurseries, Inc. | $14.91 |
| H-300-23016-705365 | 29 | 3/29/2023 | 6/6/2023 | NC | Dual Venture Farms, Inc. | $14.91 |
| H-300-23023-720534 | 25 | 4/5/2023 | 5/13/2023 | NC | Dual Venture Farms, Inc. | $14.91 |
| H-300-23023-720595 | 1 | 4/5/2023 | 5/13/2023 | NC | Dual Venture Farms, Inc. | $14.91 |
| H-300-23037-752860 | 15 | 4/19/2023 | 5/19/2023 | NC | The Terra Ceia Farms, LLC | $14.91 |
| H-300-23072-843592 | 1 | 5/25/2023 | 7/10/2023 | NC | Mattamuskeet Fresh Produce, LLC | $14.91 |
| H-300-23072-843591 | 15 | 5/25/2023 | 7/10/2023 | NC | Mattamuskeet Fresh Produce, LLC | $14.91 |

| H-300-24003-613045 | 1 | 3/18/2024 | 12/13/2024 | VA | Tankard Nurseries, Inc. | $15.81 |
|---|---|---|---|---|---|---|
| H-300-24003-612794 | 24 | 3/18/2024 | 12/13/2024 | VA | Tankard Nurseries, Inc. | $15.81 |
| H-300-24026-670538 | 20 | 4/8/2024 | 5/3/2024 | NC | Dual Venture Farms, Inc. | $15.81 |
| H-300-24031-681371 | 25 | 4/15/2024 | 5/11/2024 | NC | Dual Venture Farms, Inc. | $15.81 |
| H-300-24051-731165 | 1 | 4/20/2024 | 5/11/2024 | NC | Dual Venture Farms, Inc. | $15.81 |

49.     In each of these H-2A employment contracts, the Las Princesas Defendants made certain promises to Plaintiffs and others similarly situated, including to:

a.      Provide three meals per day at the cost of the applicable daily subsistence rate;

b.      Pay at least the AEWR, the prevailing hourly or piece rate wage, or the federal or state minimum wage, whichever is higher, for all hours worked in the payroll period;

c.      Pay that wage to Plaintiffs and others similarly situated their wages free and clear, i.e., without the deduction of items for the employer's benefit or the reduction of an employee's wages by shifting Defendants' costs to their employees, as incorporated into the parties' working arrangement and the written job order and as detailed in federal regulations at 20 C.F.R. § 655.122(p)(2);

d.      Reimburse workers for reasonable costs incurred by the worker for transportation costs from the place from which the worker has come to work for Defendants to the Defendants' place of employment in the amount of the most

10

economical and reasonable common carrier transportation charge for the distances involved when the worker completes fifty percent (50%) of the work contract, if not sooner;

e.    "[C]omply with applicable Federal, State and local law and regulations," including the FLSA and the prohibition on confiscating workers' passports, visas, or other immigration documents. *See* 20 C.F.R. § 655.135.

50.    Defendants violated these promises in multiple ways, including: not providing adequate meals for their employees in Virginia, and overcharging for those meals; not paying the AEWR for all hours worked in each workweek; deducting excessing meal charges from the wages of employees in Virginia; not timely or completely reimbursing workers for the costs of their transportation to the U.S.; and confiscating employees' passports and visas.

51.    The minimum daily subsistence amounts are published in the Federal Register and were incorporated into Plaintiffs' and other similarly situated workers' contracts.

### *2021 Job Orders*

52.    As referenced in the chart above, in 2021, the Las Princesas Defendants applied for and received temporary labor certification for twenty-five (25) workers to work at Defendant Tankard from October 4 to December 17, 2021, planting, trimming, propagating, weeding, pulling, and loading of plants onto vehicles (Job Order number H-300-21217-503735, hereinafter "Job Order 3735").  Ms. Zeferino signed the employer certification portion of that job order.

53.    Job Order 3735 included an AEWR of $13.15 and a daily subsistence rate of $13.17.

54.    Plaintiffs Hernández Lara and Lorenzo Perez came to the U.S. in 2021 and were employed pursuant to Job Order 3735.

*2022 Job Orders*

55.      As also referenced in the chart above, in 2022, the Las Princesas Defendants applied for and received temporary labor certification for forty-nine (49) workers to work at Dual Venture Farms, Inc. in Pantego, NC from April 4, 2022 to May 6, 2022, cutting flowers and doing general farm upkeep (Job Order Number H-300-22034-874840, hereinafter "Job Order 4840").   Ms. Zeferino signed the employer certification portion of that job order.

56.      Job Order 4840 included an AEWR of $14.16 and a daily subsistence rate of $13.17.

57.      Upon information and belief, Plaintiff Santiago Gómez was employed pursuant to Job Order 4840.

58.      Defendants applied for and received temporary labor certification for twenty-five (25) workers to work at Defendant Tankard from March 15, 2022 to December 16, 2022, planting, trimming, propagating, spacing, and loading plants onto vehicles (Job Order Number H-300-22003-803116, hereinafter "Job Order 3116"). Ms. Zeferino signed the employer certification portion of that job order.

59.      Job Order 3116 included an AEWR of $14.16 and a daily subsistence rate of $13.17.

60.      Upon information and belief, Plaintiff Hernández Espinoza was employed pursuant to Job Order 3116.

*2023 and 2024 Job Orders*

61.      As referenced in the chart above, Las Princesas applied for and received temporary labor certification for workers in 2023 and 2024 to work at Tankard and other locations.

62.     The AEWR rate for the 2023 Job Orders was $14.91, and the subsistence rate was $14.00. The AEWR rate for the 2024 Job Orders was $15.81, and the subsistence rate was $15.46.

### INDIVIDUAL PLAINTIFF FACTS

#### *Uriel Hernández Espinoza*

63.     Plaintiff Hernández Espinoza was recruited by Las Princesas Defendants in Mexico to work at Tankard Nurseries in Virginia in 2022.

64.     Before coming to Virginia, Plaintiff Hernández Espinoza was required to pay 16,000 Mexican pesos as a recruitment fee. He was also required to pay for travel between his hometown in Guerrero, Mexico, to Monterrey, for a two-night stay in Monterrey while waiting on transportation to Virginia, and the fees for his H-2A visa.

65.     Plaintiff Hernández Espinoza paid approximately 10,000 pesos for an Uber from his hometown in Guerrero, Mexico, to Monterrey. He also paid approximately 3,000 pesos for a hotel room and 2,000 pesos for food while staying in Monterrey to await transportation.

66.     He paid approximately $300 for food during the journey from Monterrey to Virginia and also $200 for the bus.

67.     Additionally, Plaintiff Hernández Espinoza paid 5,000 pesos for his H-2A visa.

68.     Defendants only reimbursed Plaintiff Hernández Espinoza $200, despite the fact that he had incurred all of these expenses for their benefit as his employers.

69.     When Plaintiff Hernández Espinoza arrived at the hotel where he would be living while working for Defendants, his passport/visa and Mexican identification card were confiscated and were only returned briefly when the Las Princesas Defendants took Plaintiff Hernández Espinoza and other similarly situated workers to the Social Security office to receive their Social Security cards approximately two months after they had started work.

70.    After his appointment at the Social Security office, Las Princesas Defendants took back Plaintiff Hernandez Espinoza's documents.

71.    Additionally, when Plaintiff Hernández Espinoza arrived in Virginia, he was told by Las Princesas Defendants not to talk to anyone outside of their group, and that he was not allowed to leave the hotel unless he was accompanied by a Las Princesas supervisor.

72.    Plaintiff Hernández Espinoza performed work at Tankard Nursery for approximately three months, from March 2022 until July 4, 2022.

73.    While at Tankard, he was supervised by a local Tankard worker.

74.    On or around June 27, 2022, Ms. Zeferino and other supervisors from Las Princesas notified the workers, including Plaintiff Hernández Espinoza, that an inspector from the U.S. DOL was going to come and speak to the workers.

75.    Ms. Zeferino and the other Las Princesas supervisors instructed the workers to tell the inspector that everything was fine and threatened that if they told the inspector anything, they would be "fucked." Specifically, they told the workers not to say anything about their documents being confiscated, or that they had paid a recruitment fee.

76.    Mr. Hernández Espinoza understood this threat to mean that if they said anything to the DOL inspector that they would be deported back to Mexico.

77.    At or around the end of June 2022, Plaintiff Hernandez Espinoza started to feel ill. He thought that it could be due to the poor quality of the food that he was given. He spoke with the Las Princesas supervisors and asked that he be allowed to seek medical attention. The Las Princesas supervisors ignored his request and said that he was not allowed to leave.

14

78.     Shortly thereafter, Plaintiff Hernandez Espinoza decided to seek medical attention on his own, so he snuck out of the hotel and got a ride from a community organization to a local clinic. The doctor at the clinic told him that he might need to have surgery.

79.     When he came back to the hotel, Plaintiff Hernandez Espinoza notified the Las Princesas supervisors that he needed further medical attention, but he was met with anger at having left without permission. They said that if he needed surgery, it was not their responsibility, and that they would send him back to Mexico to see a doctor there.

80.     After this incident, Plaintiff Hernandez Espinoza decided that he could no longer work for such cruel and uncaring employers, so he made a plan to escape.

81.     On July 4, 2022, Plaintiff Hernández Espinoza left the hotel where he had been staying while working in Virginia and he took a Greyhound bus to go to another state.  He has not since returned to work for Defendants.

### Jose Alberto Hernández Lara

82.     Plaintiff Hernández Lara performed work at Tankard Nursery for approximately one-and-a-half (1.5) months starting on September 27, 2021.

83.     Plaintiff Hernández Lara and his H-2A co-workers were told by the Las Princesas Defendants not to speak to any of the other workers employed by Tankard Nursery outside of their work group.

84.     After about one-and-a-half (1.5) months, Mr. Hernández Lara was transported to Washington, North Carolina, by someone affiliated with Las Princesas. In North Carolina, the Las Princesas Defendants informed him that he would be working under a different name.

85.    He began work at a nursery, Terra Ceia Farms, in Pantego, NC, and his paychecks were issued to him by that nursery in the false name assigned to him by Las Princesas. He was paid less than the AEWR during the time he worked at the nursery.

86.    Plaintiff Hernández Lara ended his employment with Las Princesas when his contract ended in December 2021.

### Ismael Lorenzo Perez

87.    Plaintiff Lorenzo Perez worked for Defendants in Virginia and then was transported by the Las Princesas Defendants from Virginia to North Carolina in December 2021.

88.    In North Carolina, Mr. Lorenzo Perez was sent to work by the Las Princesas Defendants at varying locations, cutting flowers and laying plastic for planting chiles, pumpkins, cabbage, and watermelon.  The work was sporadic, and he had to borrow money for living expenses at times.

89.    For about a month, in approximately March 2022, the Las Princesas Defendants did not provide Mr. Lorenzo Perez or his co-workers with any work.

90.    Eventually, the Las Princesas Defendants transported Mr. Lorenzo Perez and his co-workers to Florida to cut tomatoes.

91.    In Florida, they lived in a hotel.

92.    They were paid by piece-rate for their work in Florida, and the most Mr. Lorenzo Perez ever earned for a day of work was about $90.

93.     Ms. Zeferino provided the Florida farm with false identification documents for the workers who had gone there, including Mr. Lorenzo Perez.  The Las Princesas Defendants continued to hold the passports/visas and other legitimate documents of Mr. Lorenzo Perez and the other workers.

94.    Ms. Zeferino told Mr. Lorenzo Perez and his co-workers to tell their Florida co-workers that they were residents of Washington, NC.

95.    At some point, some government officials arrived at the Florida farm to ask questions about the workers' treatment. Some of the workers explained that their passports had been confiscated.  Because of this questioning, Ms. Zeferino moved the workers back to North Carolina. She also finally returned their passports/visas.

96.    After returning from Florida, beginning in about June of 2022, Mr. Lorenzo Perez and his co-workers began working in Pantego, NC, picking crops.

97.    They began work around 6:00 AM and often did not finish until 1:00 or 2:00 AM.

98.    Mr. Lorenzo Perez was paid $12 per hour during this time.

99.    There were no stores nearby to buy food, so they went hungry at times.

100.    Mr. Lorenzo Perez, suffering from lack of sleep and food, left the housing and his employment with the Las Princesas Defendants.

### *Leonel Santiago Gomez*

101.    Shortly after Mr. Santiago Gómez and his co-workers began working in North Carolina, Ms. Zeferino told them that she was unable to extend their visas and so they were now working illegally, but they were nevertheless required to continue working until she told them they were done, or she would report them.

102.    Mr. Santiago Gómez understood that Ms. Zeferino meant she would report them to immigration officials.

103.    Mr. Santiago Gómez and his co-workers were sent to work at various farms, including Morris Blueberry in New Bern, NC. They worked long hours, sometimes leaving the housing at 5:00 AM and returning at 11:30 PM and were paid $12 an hour.

17

104.    They were paid by check, under false names, at an hourly rate which was less than the AEWR.

105.    They were paid by piece-rate at times, but sometimes the entire group of twenty (20) workers would be paid in one lump sum, and they had to divide the money among themselves.

106.    Approximately three months after he arrived in North Carolina, Mr. Santiago Gómez quit. At that time, Ms. Zeferino still had not returned his documents to him.

### RECRUITMENT OF PLAINTIFFS AND OTHERS SIMILARLY SITUATED

107.    In each year between 2021 and the present, the Las Princesas Defendants recruited Plaintiffs and other similarly-situated workers in Mexico through a network of Mexico-based recruiters and through Defendants' U.S.-based agents and supervisors.

108.    Through these recruiters and agents, Defendants made employment offers to the Plaintiffs and others similarly situated to plant, harvest, and pack produce and other agricultural products in Virginia and/or North Carolina.

109.    However, the recruiters promised the Plaintiffs who worked in North Carolina and others recruited with them that they would receive work visas for more time than the visas they actually received.

110.    For example, the visas that Messrs. Hernández Lara and Lorenzo Perez were issued were only for approximately three months, rather than one year as they had been promised by the recruiter in Mexico.

111.    In addition, Plaintiffs and others similarly situated were required to pay recruitment fees to their various recruiters.

112.    For example, in 2021, Plaintiff Hernández Lara was required to pay approximately 25,000 pesos (at the average 2021 exchange rate, $1,252.50 USD) in order to be put on the list of

workers to come to work for Defendants and to pay another payment of approximately 1,000 pesos (approximately $50 USD) once he was on the list.

113.    In 2021, Plaintiff Lorenzo Perez paid approximately 16,000 pesos (approximately $802 USD) to a recruiter to be put on the list of workers to come work for the Defendants.

114.    In 2022, Plaintiff Santiago Gómez paid approximately 18,000 (at the average 2022 exchange rate, approximately $878 USD) pesos to a recruiter to be put on the list of workers to come work for the Las Princesas Defendants.

115.    In 2022, Plaintiff Hernández Espinoza paid approximately 16,000 pesos (approximately $820 USD) to a recruiter to be put on the list of workers to come work for the Defendants.

116.    Upon information and belief, the putative class members also paid recruitment fees to come work for all Defendants.

### TRAVEL EXPENSES OF PLAINTIFFS AND OTHERS SIMILARLY SITUATED

117.    Plaintiffs and other similarly situated workers also incurred various immigration and travel-related expenses in order to come to work for Defendants.

#### *Travel to Monterrey and Visa and Consular Processing Fees*

118.    Plaintiffs and other similarly-situated workers were required to travel, at their own expense, from their hometowns in Mexico to the U.S. Consulate in Monterrey, Nuevo Leon, Mexico, for the consular interviews necessary to obtain H-2A visas.

119.    Plaintiffs and other similarly situated workers paid their own lodging and subsistence expenses in Monterrey, Mexico, while they completed visa application forms, attended consular interviews, and waited for their visa applications to be processed and for their visas to be issued.

120.    Plaintiffs and others similarly situated were also required to pay visa and processing fees in order to come to the U.S.

121.    In 2021, the Las Princesas Defendants required Plaintiffs Hernández Lara, Lorenzo Perez and other similarly-situated workers to pay visa and processing fees in amounts ranging up to $200 per season in each season that they obtained H-2A visas to work for Defendants.

122.    In 2022, the Las Princesas Defendants required Plaintiffs Santiago Gómez and Hernández Espinoza and other similarly-situated workers to pay visa and processing fees of in amounts ranging up to $200 per season in each season that they obtained H-2A visas to work for Defendants.

123.    Upon information and belief, in 2023 and 2024, the Las Princesas Defendants required similarly-situated workers to pay visa and processing fees in amounts ranging up to $200 per season in each season that they obtained H-2A visas to work for Defendants.

124.    For each year in which they obtained H-2A visas, Plaintiffs and other similarly-situated workers each had to pay a $6 fee for the issuance of the Customs and Border Patrol Form I-94 required to enter the U.S.

125.    At the conclusion of the processing period in Monterrey, Mexico, Plaintiffs and others similarly situated received H-2A visas, which became part of their passports.

### *Travel to the United States*

126.    Following the issuance of the H-2A visas, Plaintiffs and other similarly-situated workers boarded buses arranged (but not paid for) by agents of Las Princesas.

127.    Plaintiffs and others similarly situated paid their own travel expenses from Monterrey, Mexico, to Defendants' operations in North Carolina and Virginia in 2021, 2022, and subsequent years.

128.    These travel expenses exceeded $150 per person.

129.    Plaintiffs and others similarly situated were also required to pay their own subsistence expenses during their journey from Monterrey to Defendants' operations in North Carolina and Virginia.

130.    The expenditures described above – the travel, subsistence expenses, consular processing, and visa fees – were primarily for the benefit of the Defendants within the meaning of 29 C.F.R. §§ 531.32 (c) and 778.217.

131.    The expenditures described above were made before receipt of the first paychecks in each contract period in which Plaintiffs and others similarly situated worked.

132.    Defendants failed to fully reimburse Plaintiffs and other similarly-situated workers during the first workweek for the costs described above, resulting in these workers' first week wages falling well below the FLSA and AEWR minimum wage.

133.    Defendants also did not reimburse Plaintiffs and other similarly-situated workers at the fifty-percent point of these workers' work periods for all inbound transportation and subsistence expenses not previously reimbursed, as was required by their employment contracts.

DEFENDANTS' LABOR-TRAFFICKING VIOLATIONS

*Inconformity of Visa Dates with Promises Made to Plaintiffs*

134.    As alleged above, for several Plaintiffs and others similarly situated, the dates on the visas they received after they had already traveled to the U.S. Embassy in Monterrey were for dramatically shorter time periods than they had been promised at the time of recruitment.

135.    For example, the visas that Messrs. Hernández Lara and Lorenzo Perez were issued were only for approximately three months, rather than one year as they had been promised by the recruiter.

136.     Upon information and belief, the visas issued to the other H-2A workers who traveled to Virginia with these Plaintiffs were also only valid for a three-month period.

137.     The visa that Plaintiff Santiago Gómez was issued was only for five days, from May 2, 2022 to May 6, 2022, rather than the four to six months he had been promised.

138.     Upon information and belief, the visas issued to the H-2A workers who traveled to North Carolina with Plaintiff Santiago Gómez were also only valid until May 6, 2022.

### *Passport and Visa Confiscation*

139.     When Plaintiffs Hernández Lara, Lorenzo Perez, and their similarly-situated co-workers boarded a bus in Monterrey, Mexico, to travel to the United States in 2021, they were required to turn over their passports, which contained their visas, to representatives of Las Princesas.

140.     Las Princesas representatives only returned the workers' passports/visas later so the workers could cross the border.

141.     After the workers' arrival in Virginia in 2021, Ms. Zeferino held a group meeting with Mr. Hernández Lara, Mr. Lorenzo Perez, and the other H-2A workers and required them to turn over their passport/visas to Las Princesas once again.

142.     During that meeting, Ms. Zeferino and Las Princesas confiscated the passports/visas of Mr. Hernández Lara, Mr. Lorenzo Perez, and their similarly-situated co-workers and kept them during the entire time they worked in the U.S. in 2021.

143.     The Las Princesas Defendants similarly confiscated and kept the passports/visas of H-2A workers in 2022.

144.     When Plaintiff Santiago Gómez and approximately forty-eight (48) co-workers arrived in Washington, North Carolina in 2022, they were taken to a house where Ms. Zeferino

22

held a meeting with the workers. At the meeting, Ms. Zeferino and Las Princesas employee Pablo Cordero collected the workers' passports (containing their visas) and Mexican identification cards.

145.    Similarly, when Plaintiff Uriel Hernández Espinoza arrived in Virginia in 2022, Las Princesas confiscated his and other workers' passports/visas. Las Princesas staff briefly gave Mr. Hernández Espinoza (and others similarly situated) his passport/visa back to allow him to apply for a Social Security card for work.

146.    After the workers' Social Security applications were completed, the Las Princesas Defendants confiscated the passports/visas again.

147.    The Las Princesas Defendants would not allow the Plaintiffs and other similarly-situated workers to retain their passports/visas.

148.    The Las Princesas Defendants retained the passports of the Plaintiffs and other similarly-situated workers in order to prevent them from leaving Las Princesas's control.

### Other Threats Towards Plaintiffs and Restriction of Movement

149.    In addition to having their movement restricted by the Las Princesas Defendants' confiscation of Plaintiffs' passports/visas, the named Plaintiffs and their co-workers were told that they should not leave their housing.

150.    Ms. Zeferino regularly informed the Plaintiffs that if they caused any problems, they would be sent back to Mexico, putting at risk what they had already paid and their opportunity to be in the United States.

151.    Ms. Zeferino explained to the H-2A workers who worked in Virginia that they should not leave the hotel where they were staying, not even to go to a nearby gas station, because they could be robbed, and Ms. Zeferino would not be responsible for anything that happened to them.

152.     The Virginia workers, including Plaintiffs Hernández Lara, Lorenzo Perez, and Hernández Espinoza, were informed that they should not go to a store without permission or without one of their supervisors, and that they were not allowed to drink alcohol. Some of these and other rules were provided to the workers in a written document that they were required to sign, though they were not given a copy of it.

153.     Ms. Zeferino also told the Virginia workers that they were not allowed to have visitors at the hotel where they were staying and that they were not allowed to talk to anyone outside of Las Princesas.

154.     Ms. Zeferino scheduled the Virginia H-2A workers' breaks at a different time from the local workers so that the workers who came to the U.S. through Las Princesas could not talk with the local workers about anything other than work matters.

155.     In 2021, the Las Princesas Defendants separately transferred Mr. Hernández Lara and Mr. Lorenzo Perez from Virginia to North Carolina for work.  About two weeks after Mr. Lorenzo Perez arrived in North Carolina, Ms. Zeferino got upset with some of the workers for going to the store to wire money to their families. She told them that they were not permitted to leave the house where they were living.

156.     Ms. Zeferino then transferred the workers to a trailer to live.  When the workers arrived at the trailer, Ms. Zeferino told Mr. Lorenzo Perez and his roommates that they should not speak to their neighbors and should not leave the property.

157.     When Plaintiff Santiago Gómez and approximately forty-eight (48) co-workers arrived in North Carolina in 2022, Ms. Zeferino told the workers they could not speak to anyone or leave the housing without permission. Ms. Zeferino also stated that if anyone left their employment, they would be reported to immigration officials.

HOUSING AND FOOD

158.    When Plaintiffs Hernández Lara, Lorenzo Perez, and approximately twenty-three (23) co-workers arrived in Virginia in 2021, they were taken to a hotel where they were to be housed. There were two workers assigned to each room.

159.    In Virginia, Plaintiff Hernández Lara and his co-workers were charged – through paycheck deductions – for three meals a day for meals provided through a food truck.   However, they were provided only two meals per day, Monday through Saturday, and none on Sundays.

160.    This weekly meal charge exceeded the allowable amounts of subsistence charges under the H-2A regulations.

161.    In 2022, when working for Tankard in Virginia, Mr. Hernández Espinoza and other similarly situated Virginia workers were required to pay $120 per week for food from a food truck that had been contracted with by Defendants. They were not allowed to go anywhere else to get food, even though the food from the truck was insufficient.

162.    This weekly charge of $120 per week was more than the subsistence rate of $13.17 per day, or $92.19 per week, as set forth in the 2022 clearance order.

163.    In 2021, Ms. Zeferino told the Plaintiff Hernández Lara and Lorenzo Perez and their similarly-situated co-workers who were working in Virginia, that, although Las Princesas was legally required to provide them with three meals a day, she could not afford this and would only provide two, and none on Sundays.  She told workers to tell any government inspectors that they were being provided three meals per day, or else the work would be over.

164.    After Las Princesas transferred him from Virginia to North Carolina to work in 2021, Mr. Lorenzo Perez was housed with fifteen (15) other people in a small house where he slept on a bed in the living room. He and his co-workers were each charged $70 per month for rent.

165.    There was no heater when Mr. Lorenzo Perez arrived in North Carolina in December, and no sheets or blankets on the beds.

166.    Shortly after that, Mr. Lorenzo Perez and his co-workers were moved to a trailer. They continued to pay $70 per month each in rent.

167.    When Mr. Santiago Gómez arrived to work in North Carolina in 2022, he and his co-workers were sent to live in two trailers. There were approximately thirteen (13) workers in the trailer where Mr. Santiago Gómez lived and approximately fifteen (15) individuals in the other trailer.

168.    No bedding was provided to Plaintiff Santiago Gómez or his co-workers. Ms. Zeferino offered to sell them blankets for $70 or $80, which could be deducted from their paychecks.  There was no heat or air conditioning in the trailer.

169.    At first, Ms. Zeferino provided the North Carolina workers with two meals per day, lunch and dinner, for $7 per plate.  Shortly thereafter, the workers began preparing their own food.

EMPLOYERS

170.    Defendant Zeferino is, along with Las Princesas, an employer of the Plaintiffs and others similarly situated.

171.    Defendant Zeferino exercises management and financial control over Las Princesas.

172.    Defendant Zeferino directs labor relations at Las Princesas and has the power to hire, fire, and alter the terms and conditions of employment for all employees.

173.    Defendant Zeferino also establishes employee schedules, maintains employment records, determines rates of pay, and assigns work responsibilities.

174.   At all times relevant to this action, Ms. Zeferino signed the job orders of Las Princesas.

175.   Las Princesas supervisors regularly met with Tankard Nursery officials while the H-2A workers were working at Tankard.

176.   Mr. Hernández Espinoza, Mr. Hernández Lara, and Mr. Lorenzo Perez and other similarly-situated individuals were dependent for their wages as a matter of economic reality on all Defendants.

177.   All Plaintiffs and other similarly situated individuals were dependent for their wages as a matter of economic reality on the Las Princesas Defendants.

## FLSA COLLECTIVE ALLEGATIONS

### (All Plaintiffs against All Defendants)

178.   Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated workers who may opt in to this action pursuant to 29 U.S.C. § 216(b) who were brought to the U.S. as H-2A workers by Las Princesas and who worked for one or more of the Defendants between May 29, 2021, and the present.

179.   Plaintiffs and the other similarly situated workers were subject to the same policies and practices of Defendants and were paid in the same manner as the Plaintiffs.  Specifically, Defendants failed to pay the Plaintiffs and other similarly-situated workers as required by the FLSA, 29 U.S.C. § 201 *et seq*., when they failed to timely reimburse them for all their H-2A related expenses (recruitment, travel, visa processing costs, hotel, meals, and/or border crossing costs) during their first workweek.

180.   Plaintiffs and others similarly situated individuals seek damages for these violations (the "FLSA Reimbursement Collective Action").

181.    Plaintiffs Lara Hernández, Lorenzo Perez, and Hernández Espinoza also bring claims on behalf of themselves and those similarly situated employees of Defendants who held H-2A visas and were not compensated at the minimum wage rate during some workweeks because they were required to kick back part of their wages for illegal meal charges. ("FLSA Underpayment Collective Action").

182.    Plaintiffs are currently unaware of the identities of all of the employees who would be members of the FLSA opt-in class, but this information is readily ascertainable from Defendants' records.   Defendants should therefore be required to provide Plaintiffs with a list – including last known addresses, telephone numbers, and email addresses if known – of all individuals who worked for Defendants as H-2A workers between May 29, 2021, and the present.

183.    Defendants' actions were willful.

### RULE 23 CLASS ALLEGATIONS

184.    The claims set forth in Counts I, III, VI, VII, VIII, IX, X, and XI are brought by the Plaintiffs specified in those counts, on behalf of themselves and all other similarly situated persons pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

185.    The Plaintiffs bring their TVPRA claims for damages on behalf of themselves and a class of persons (the "Trafficking Class") consisting of "All individuals who were brought to the U.S. by Las Princesas to perform agricultural work under H-2A contracts in 2021 and 2022."

186.    Plaintiffs Hernández Lara, Lorenzo Perez, and Santiago Gómez bring their claims under the NC Human Trafficking Law for damages on behalf of themselves and a class of persons ("NC Trafficking Class") consisting of "All individuals who were brought to the U.S. by Las Princesas to perform agricultural work under H-2A contracts and who performed work in North Carolina from May 29, 2021, through 2022."

187.    Plaintiffs Hernández Lara, Lorenzo Perez, and Santiago Gómez bring their AWPA claims for damages on behalf of themselves and a class of persons (the "AWPA Class") consisting of "All individuals who were brought to the U.S. as H-2A workers by Las Princesas and then were required to perform agricultural work outside of the time periods covered by their H-2A visas, between May 29, 2021, and the present."

188.    Plaintiff Santiago Gómez brings a NC Wage & Hour Act claims on behalf of himself and class of persons ("NCWHA Reimbursement Class") consisting of "All individuals who were brought to the U.S. as H-2A workers by Las Princesas and  who were or are employed in North Carolina in any pay period falling within two years prior to the date of this Complaint and continuing until the date final judgment is entered."

189.    Plaintiffs Hernández Lara, Lorenzo Perez, and Santiago Gómez bring a NC Wage and Hour Act claim on behalf of themselves and a class of persons ("NCWHA Promised Wage Class") consisting of "All individuals who were brought to the U.S. as H-2A workers by Las Princesas and who were or are employed in North Carolina during their first week of work in the United States, when that workweek fell or will fall  within two years prior to the date of this Complaint and continuing until the date final judgment is entered."

190.    Plaintiff Santiago Gomez brings his North Carolina common law claim on behalf of himself and a class of persons (the "North Carolina Contract Class") consisting of "All individuals who were brought to the U.S. as H-2A workers by Las Princesas and who performed work in North Carolina between May 29, 2021, and the present."

191.    Plaintiffs Hernández Lara, Lorenzo Perez, and Hernández Espinoza bring their Virginia Wage Payment Act claims on behalf of themselves and a class of persons (the "VWPA Class") consisting of "All individuals who were brought to the U.S. by Las Princesas as H-2A

workers and who were employed by the Defendants as agricultural workers in Virginia between May 29, 2021, and the present."

192.    Plaintiffs Hernández Lara and Lorenzo Perez bring their Virginia Overtime Wage Act claim on behalf of himself and a class of persons (the "VOWA Class") consisting of "All individuals who were brought to the U.S. by Las Princesas as H-2A workers and who were employed by the Defendants as agricultural workers in Virginia between July 1, 2021, and June 30, 2022 ."

193.    Plaintiffs Hernández Lara, Lorenzo Perez, and Hernández Espinoza bring their Virginia common law claims on behalf of themselves and a class of persons (the "Virginia Contract Class") consisting of "All individuals who were brought to the U.S. by Las Princesas as H-2A workers and were employed by the Defendants as agricultural workers in Virginia between May 29, 2021 and the present."

194.    Excluded from the classes described above (collectively, the "Classes") are the legal representatives, officers, directors, assigns, and successors of Defendants; any individual who at any time during the class period has had a controlling interest in any Defendant; and all persons who submit timely and otherwise proper requests for exclusion from the Classes.

*Numerosity*

195.    Upon information and belief, there are approximately 400 individuals who would be members of the Trafficking Class.

196.    Upon information and belief, there are approximately 400 individuals who would be members of the NC Trafficking Class.

197.    Upon information and belief, there are at least 400 individuals who would be members of the AWPA Class.

198.     Upon information and belief, there are approximately 100 individuals who worked for Defendants in Virginia and who would be members of the VWPA Class and the VA Contract Class.

199.     Upon information and belief, there are approximately 50 individuals who worked for Defendants in Virginia and would be members of the VOWA Class.

200.     Upon information and belief, there are approximately 400 individuals who worked for the Las Princesas Defendants in North Carolina and would be members of the NCWHA Classes and the NC Contract Classes.

201.     The members of the Classes are sufficiently numerous that joinder of all members is impractical.

202.     Plaintiffs are currently unaware of the identities of all of the employees who would be members of the Classes, but this information is readily ascertainable from Defendants' records. Defendants should therefore be required to provide Plaintiffs with a list – including last known addresses, telephone numbers, and email addresses if known – of all individuals who come within the class definitions.

### *Existence and Predominance of Common Questions*

203.     Common questions of law and fact exist as to Plaintiffs and all members of the Classes and predominate over questions affecting only individual Class members.

204.     Common questions as to the Trafficking Class include:

a.     Whether the Las Princesas Defendants provided or obtained forced labor by concealing, removing, confiscating, and/or possessing Plaintiffs' and other class members' passports/visas;

b.     Whether the Las Princesas Defendants were perpetrators of the acts

described above;

c.      Whether the Las Princesas Defendants knowingly benefitted, financially or by receiving anything of value, from participating in a venture Defendants knew or should have known engaged in the acts described above;

d.      Whether the Las Princesas Defendants' conduct violated the TVPRA; and

e.      The nature and extent of class-wide injury, and the measure of damages for those injuries.

205.    Common questions as to the NC Trafficking Class include:

a.      Whether the Las Princesas Defendants concealed, removed, confiscated, and/or possessed Plaintiffs' and other class members' passports in the course of committing and/or with the intent to commit the acts described above;

b.      Whether the Las Princesas Defendants were perpetrators of the acts described above;

c.      Whether the Las Princesas Defendants knowingly benefitted, financially or by receiving anything of value, from participating in a venture Defendants knew or should have known engaged in the acts described above;

d.      Whether the Las Princesas Defendants' conduct violated the NC Human Trafficking Law; and

e.      The nature and extent of class-wide injury, and the measure of damages for those injuries.

206.    Common questions as to the AWPA Class include:

a.      Whether the Plaintiffs and others similarly situated were employees within the meaning of the AWPA; and

32

b.       Whether the Last Princesas Defendants entered into a working arrangement with the Plaintiffs and others similarly situated; and

c.       Whether the Las Princesas Defendants failed to comply with the working arrangement when they paid members of the AWPA Class less than the AEWR; and

d.       Whether the Las Princesas Defendants failed to pay wages when due when they paid members of the AWPA Class less than the AEWR.

207.    Common questions as to the VWPA Class include:

a.       Whether the Defendants paid Virginia Plaintiffs the promised wage, i.e., the AEWR, for all hours worked as required by Virgina wage and hour laws, including the reimbursement of any H-2A related expenses, late payments, or nonpayments; and

b.       The nature and extent of class-wide injury and the measure of damages for those injuries.

208.    Common questions as to the VOWA Class include:

a.       Whether the Defendants paid VOWA Class members an overtime premium for all hours worked above forty (40) in any workweek between July 30, 2021, and June 30, 2022; and

b.       The nature and extent of class-wide injury and the measure of damages for those injuries.

209.    Common questions as to the Virginia Contract Class include:

a.       Whether the Las Princesas Defendants and the members of the Virginia Contract Class entered into a contract;

b.       What the terms of the contract were; and

c.       Whether Defendants breached the terms of that contract.

210.    Common questions as to the North Carolina Contract Class include:

a.    Whether the Las Princesas Defendants and the members of the North Carolina Contract Class entered into a contract;

b.    What the terms of the contract were; and

c.    Whether Defendants breached the terms of that contract.

211.    Common questions as to the NCWHA Classes include:

a.    Whether the Las Princesas Defendants disclosed to Plaintiffs Hernández Lara, Lorenzo Perez, Santiago Gómez and the members of the NCWHA classes pursuant to N.C. Gen. Stat. §§ 95-25.13(1)-(2) and 13 N.C.A.C. § 12.0803 that they would pay wages at the Adverse Effect Wage Rate for the work they performed;

b.    Whether the Las Princesas Defendants reimbursed Plaintiffs Santiago Gómez and the members of the NCWHA Reimbursement Class for their transportation, visa, meals, hotel, and border crossing costs during the first workweek;

c.    Whether the payments the Las Princesas Defendants required Plaintiffs Hernández Lara, Lorenzo Perez, Santiago Gómez and the members of the NCWHA Promised Wage Class to make for a meal plan constituted illegal kickbacks;

d.    Whether the charge for meals exceeded the allowable rate for meals;

e.    Whether the cost of the meals exceeded the actual cost of the food provided and the reasonable cost.

f.    The nature and extent of class-wide injury and the measure of damages for those injuries.

### *Typicality*

212.    Members of the proposed Classes have all been subject to the same unlawful

34

practices of Defendants, and their claims arise out of these same practices.

213.    The Las Princesas Defendants subjected Plaintiffs and the proposed members of Trafficking Class to the same coercive rules and practices that constituted violations of the TVPRA.

214.    The Las Princesas Defendants subjected Plaintiffs Hernández Lara, Lorenzo Perez, Santiago Gómez and the proposed members of the NC Trafficking Class to the same coercive rules and practices that constituted violations of the NC Human Trafficking Law.

215.    Defendants subjected Plaintiffs Hernández Lara, Lorenzo Perez, Santiago Gómez and the proposed members of AWPA Class to the same practices that constituted violations of the AWPA.

216.    Plaintiffs Hernández Lara, Lorenzo Perez, and Hernández Espinoza and the proposed members of the VWPA Class have the same statutory rights under the Virginia wage and hour laws and were subjected to the same practices that constituted violations of Virginia law.

217.    Plaintiff Hernández Lara and the proposed members of the VOWA Class have the same statutory rights under the Virginia wage and hour laws and were subjected to the same practices that constituted violations of Virginia law.

218.    Plaintiffs Hernández Lara, Lorenzo Perez, Santiago Gómez, and the proposed members of NCWHA Promised Wage Class have the same statutory rights under the NCHWA and were subjected to the same practices that constituted violations of North Carolina law.

219.    Plaintiff Santiago Gómez and the proposed members of NCWHA Reimbursement Class have the same statutory rights under the North Carolina wage and hour law and were subjected to the same practices that constituted violations of North Carolina law.

220.    Plaintiffs Santiago Gómez and the proposed members of the North Carolina

Contract Class were subject to common policies, and those typical, common claims predominate over any questions affecting only individual class members.

221.    Plaintiffs Hernández Lara, Lorenzo Perez, and Hernández Espinoza and the proposed members of the Virginia Contract Class were subjected to common policies, and those typical, common claims predominate over any questions affecting only individual class members.

222.    Plaintiffs and proposed class members of the various classes suffered similar types of damages.

223.    Plaintiffs' claims are typical of the claims of the Classes because, among other things, Plaintiffs were employees who worked for Defendants and suffered the same violations as the proposed members of the Classes.

224.    Plaintiffs' interests are co-extensive with the interests of the members of the Classes; Plaintiffs have no interest adverse to the members of the Classes.

*Adequacy*

225.    Plaintiffs will fairly and adequately represent the interests of the members of the Classes. Their interests do not conflict with the interests of the members of the Classes they seek to represent.

226.    Plaintiffs understand that, as class representatives, they assume responsibilities to the Classes to represent their interests fairly and adequately.

227.    Plaintiffs have retained counsel experienced in prosecuting class actions and in employment matters. There is no reason why Plaintiffs and their counsel will not vigorously pursue this matter.

*Superiority*

228.    A class action is superior to other available means for the fair and efficient

adjudication of the claims at issue herein.

229.    The damages suffered by each individual member of the Classes may not be sufficient to justify the burden and expense, particularly in light of the transnational nature of this case, of individual prosecution of the litigation necessitated by Defendants' conduct.

230.    Further, it would be difficult for members of the Classes to obtain individual redress effectively for the wrongs done to them.  If individual actions were to be brought by each member of the Classes, the result would be a multiplicity of actions, creating hardships for members of the Classes, the Court, and the Defendants.

231.    The members of the Classes lack the means and resources to secure individual legal assistance, have little command of the English language or familiarity with the United States legal system, and are particularly unlikely to be aware of their rights to prosecute these claims.

232.    Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the Court system.

233.    By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

234.    This case does not present individualized factual or legal issues which would render a class action difficult.

235.    In the alternative, the Classes may be certified because: (a) the prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual  members of the Classes, which would establish incompatible standards of conduct for Defendants; (b) the prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which

would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and (c) Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

**FIRST CAUSE OF ACTION**
**TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT**
**(CLASS CLAIM BY ALL PLAINTIFFS ON BEHALF OF THE TRAFFICKING CLASS)**
**(Against Las Princesas and Martha Zeferino Jose)**

236.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

237.    This Cause of Action sets forth claims by Plaintiffs, for themselves and for other members of the Trafficking Class, against the Las Princesas Defendants under the civil remedies provision of the TVPRA, 18 U.S.C. § 1595, in that:

    a.    Plaintiffs and the other members of the Trafficking Class are victims of violations of the following provisions of Title 18, Chapter 77 of the United States Code: 18 U.S.C. §§ 1592(a), and 1597(a);

    b.    The Las Princesas Defendants were perpetrators of the foregoing violations; and

    c.    The Las Princesas Defendants knowingly benefited, financially or by receiving anything of value, from participation in a venture that the Las Princesas Defendants knew or should have known engaged in the foregoing violations.

238.    In addition, the Las Princesas Defendants knowingly recruited, transported, harbored and/or obtained the labor or services of Plaintiffs and other members of the Trafficking Class in furtherance of the Las Princesas Defendants' violations of the following provisions of

Title 18, Chapter 77 of the U.S. Code:

       a.     removing, confiscating, or possessing Plaintiffs' and other members of the Trafficking Class's passports and other immigration documents in the course of, or with the intent to violate 18 U.S.C. §1589, violating 18 U.S.C. § 1592(a);

       b.     attempting to violate 18 U.S.C. § 1589, thereby violating 18 U.S.C. § 1594(a); and

       c.     conspiring to violate 18 U.S.C. §§ 1589 and 1592, thereby violating 18 U.S.C. § 1594(b).

239.    In violation of 18 U.S.C. § 1592(a), the Las Princesas Defendants concealed, removed, confiscated, and/or possessed the Trafficking Class members' passports and other immigration documents in the course of violating and/or with the intent to violate 18 U.S.C. §§ 1589 and 1590.

240.    In violation of 18 U.S.C. § 1592(a)(3), the Las Princesas Defendants concealed, removed, confiscated, and/or possessed the Trafficking Class members' passports and other immigration documents "to prevent or restrict or to attempt to prevent or restrict" their ability to freely move so as to "maintain [their] labor or services."

241.    In violation of 18 U.S.C. § 1594(b), the Las Princesas Defendants conspired with each other to violate 18 U.S.C. §§ 1589 and 1592.

242.    In violation of 18 U.S.C. § 1597(a), the Las Princesas Defendants concealed, removed, confiscated, and possessed Plaintiffs' and members of the Trafficking Class's passports and immigration documents in the course of committing fraud in foreign labor contracting. *See* 18 U.S.C. § 1351(a).

243.    As a proximate result of the conduct of Defendants, Plaintiffs and the other

members of the Trafficking Class have suffered financial and other damages.

244.    Under the TVPRA, Plaintiffs and the other members of the Trafficking Class are entitled to recover:

a.    compensatory and punitive damages in an amount to be proven at trial, including damages for emotional distress;

c.    punitive damages; and

d.    attorneys' and experts' fees and costs as authorized by 18 U.S.C. § 1595.

### SECOND CAUSE OF ACTION
### TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT
### (INDIVIDUAL CLAIM BROUGHT BY THE FOUR PLAINTIFFS)
### (Against Las Princesas and Martha Zeferino Jose)

245.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

246.    This Cause of Action sets forth claims by Plaintiffs individually, and not on behalf of a class, against the Las Princesas Defendants under the civil remedies provision of the TVPRA, 18 U.S.C. § 1595, in that:

a.    Plaintiffs are victims of violations of the following provisions of Title 18, Chapter 77 of the United States Code: 18 U.S.C. §§ 1589 (forced labor) and1590 (trafficking);

b.    The Las Princesas Defendants were perpetrators of the foregoing violations; and

c.    The Las Princesas Defendants knowingly benefited, financially or by receiving anything of value, from participation in a venture that the Las Princesas Defendants knew or should have known engaged in the foregoing violations.

247.    The Las Princesas Defendants knowingly recruited and obtained the labor or

services of Plaintiffs.

248.    The Las Princesas Defendants attempted to and did subject Plaintiffs to forced labor in violation of 18 U.S.C. § 1589.

249.    In violation of 18 U.S.C. §§ 1589(1)-(4), the Las Princesas Defendants knowingly recruited and obtained the labor or services of Plaintiffs by means of:

    a.    Threats of physical restraint;

    b.    Abuse of law or legal process;

    c.    Threatened abuse of law or legal process; and

    d.    A scheme, plan, or pattern intended to cause Plaintiffs to believe that, if they did not perform such labor or services, they or another person would suffer serious harm or physical restraint.

250.    The Las Princesas Defendants also vicariously, by and through their agents, knowingly recruited, provided, or obtained the labor of Plaintiffs by various deceptive and/or coercive means including (a) knowingly making false representations on the applications and accompanying Clearance Orders submitted to U.S. DOL for approval; (b) making fraudulent promises to Plaintiffs regarding the terms of their living and/or working conditions with them in the U.S.; (c) making fraudulent promises to Plaintiffs regarding the length of their visas to work with them in the U.S.; (d) causing Plaintiffs to believe they could be arrested for quitting their employment with the Las Princesas Defendants; and (e) threatening to report Plaintiffs to federal immigration control officers or other similar law enforcement.

251.    Defendants knowingly benefited financially and by receiving anything of value (including, but not limited to, Plaintiffs' labor, and resulting financial profits) from participating in a venture Defendants knew or should have known engaged in violations of Title 18, Chapter 77

of the United States Code.

252.    In violation of 18 U.S.C. § 1590, and in addition to the violations set forth above, the Las Princesas Defendants knowingly recruited, transported, harbored and/or obtained the labor or services of Plaintiffs in furtherance of the Las Princesas Defendants' violations of the foregoing provisions of 18 U.S.C. § 1589.

253.    As a proximate result of the conduct of Defendants, Plaintiffs have suffered financial and other damages.

254.    Under the TVPRA, Plaintiffs are entitled to recover:

    a.    compensatory and punitive damages in an amount to be proven at trial, including damages for emotional distress;

    b.    punitive damages; and

    c.    attorneys' and experts' fees and costs as authorized by 18 U.S.C. § 1595.

**THIRD CAUSE OF ACTION**
**NORTH CAROLINA HUMAN TRAFFICKING LAW**
**(CLASS CLAIM BY PLAINTIFFS HERNÁNDEZ LARA, LORENZO PEREZ, AND**
**SANTIAGO GOMEZ ON BEHALF OF THE TRAFFICKING CLASS)**
**(Against Las Princesas and Martha Zeferino Jose)**

255.    Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

256.    Plaintiffs Hernández Lara, Lorenzo Perez, and Santiago Gómez bring this civil claim pursuant to the civil remedy provisions of the North Carolina Human Trafficking Act, N.C. Gen. Stat. § 14-43.18, on behalf of themselves and other members of the NC Trafficking Class.

257.    The North Carolina Human Trafficking Act defines human trafficking as: "knowingly or in reckless disregard of the consequences of the action recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], or obtain[ing] by any means another person with the intent

that the other person be held in involuntary servitude." N.C. Gen. Stat. § 14-43.11.

258.    Involuntary servitude is the performance of labor "by deception, coercion, or intimidation using violence or the threat of violence or by any other means of coercion or intimidation." N.C. Gen. Stat. § 14-43.10.

259.    Coercion includes:

a.    "causing or threatening to cause bodily harm to any person, physically restraining or confining any person, or threatening to physically restrain or confine any person[;]

b.    Exposing or threatening to expose any fact or information that if revealed would tend to subject a person to criminal or immigration proceedings, hatred, contempt, or ridicule[; or]

c.    Destroying, concealing, removing, confiscating, or possessing any actual or purported passport or other immigration document, or any other actual or purported government identification document, of any person." N.C. Gen. Stat. § 14-43.10.

260.    The Las Princesas Defendants, directly and vicariously, by and through their agents, knowingly recruited, provided, or obtained the labor of Plaintiffs and other members of the NC Trafficking Class by various deceptive and/or coercive means including confiscating and possessing their passport and other immigration and government documents.

261.    For these injuries, Plaintiffs and other members of the NC Trafficking Class have suffered injury and are entitled to recover damages, including punitive damages, and attorneys' fees, pursuant to N.C. Gen. Stat. § 14-43.18.

**FOURTH CAUSE OF ACTION**
**NORTH CAROLINA HUMAN TRAFFICKING LAW**
**(INDIVIDUAL CLAIM BY PLAINTIFFS HERNÁNDEZ LARA, LORENZO PEREZ,**
**AND SANTIAGO GOMEZ)**
**(Against Las Princesas and Martha Zeferino Jose)**

271.    Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

272.    Plaintiffs Hernández Lara, Lorenzo Perez, and Santiago Gómez bring this civil claim on behalf of themselves pursuant to the civil remedy provisions of the North Carolina Human Trafficking Act, N.C. Gen. Stat. § 14-43.18.

273.    The Las Princesas Defendants, directly and vicariously, by and through their agents, knowingly recruited, provided, or obtained the labor of Plaintiffs by various deceptive and/or coercive means including:

        a.      Knowingly making false representations on the applications and accompanying Clearance Orders submitted to U.S. DOL for approval;

        b.      Making fraudulent promises to Plaintiffs regarding the terms of their living and/or working conditions with them in the U.S.;

        c.      Making fraudulent promises to Plaintiffs regarding the length of their visas to work with them in the U.S.;

        d.      Causing Plaintiffs to believe they could be arrested for quitting their employment with the Las Princesas Defendants;

        e.      Threatening to report Plaintiffs to federal immigration control officers or other similar law enforcement.

274.    For these injuries, Plaintiffs Hernández Lara, Lorenzo Perez, and Santiago Gómez have suffered injury and are entitled to recover damages, including punitive damages, and

attorneys' fees, pursuant to N.C. Gen. Stat. § 14-43.18.

### FIFTH CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT (MINIMUM WAGE)
### (COLLECTIVE CLAIM ON BEHALF OF PLAINTIFFS AND OPT-IN PLAINTIFFS)
### (Against all Defendants)

275.    Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

276.    This Count sets forth a claim by Plaintiffs and any additional individuals who may choose to opt into this action for damages for Defendants' violations of the minimum wage provisions of the FLSA pursuant to 29 U.S.C. § 216(b).

277.    As detailed above, Defendants failed to pay Plaintiffs and others similarly situated at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek, as required by 29 U.S.C. § 206(a).

278.    Plaintiffs have consented in writing to bring this FLSA action and have filed their written consents with this Complaint. **Exhibit 1.**

279.    The violations of the FLSA resulted from Defendants' willful failure to reimburse expenses as detailed above, which Plaintiffs and members of the FLSA Reimbursement Class incurred primarily for the benefit or convenience of Defendants prior to their first week of work or after their last week of work. When these expenses were subtracted from the Plaintiffs' and other workers' first weeks' pay and/or last weeks' pay, as required by law, their earnings fell well below the required average minimum hourly wage for that pay period.

280.    The violations of the FLSA also resulted from Defendants' requirement that Plaintiffs Hernández Lara, Lorenzo Perez, Hernández Espinoza, and members of the FLSA Underpayment Class kick back part of their wages for illegal meal charges, as described above.

281.    Defendants' violations set out in this Count were willful within the meaning of

FLSA as Defendants had knowledge of their FLSA obligations and failed to comply with them.

282.    Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of the FLSA set forth in this Count, Plaintiffs and those additional individuals who may choose to opt into this action are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they were suffered or permitted to work at Defendants' operations and during which they earned less than the applicable minimum wage, and for weeks in which they were paid late, an amount of liquidated damages equal to the amount originally owed Plaintiffs and the Opt-in Plaintiffs also seek, and are entitled to, reasonable attorneys' fees incurred by their counsel and costs of Court pursuant to 29 U.S.C. § 216(b).

### SIXTH CAUSE OF ACTION
### MIGRANT & SEASONAL AGRICULTURAL WORKER PROTECTION ACT (AWPA)
### (CLASS CLAIM BY PLAINTIFFS HERNÁNDEZ LARA, LORENZO PEREZ, AND SANTIAGO GOMEZ ON BEHALF OF THE AWPA CLASS)
### (Against Las Princesas and Martha Zeferino Jose)

283.    Plaintiffs Hernández Lara, Lorenzo Perez, and Santiago Gómez incorporate each of the allegations contained in the preceding paragraphs by reference.

284.    This count sets forth a claim under the Migrant & Seasonal Agricultural Worker Protection Act for breach of the parties' working arrangement and other claims.

285.    Plaintiffs Hernández Lara, Lorenzo Perez, and Santiago Gómez bring this claim for themselves and members of the AWPA Class for work they performed for which they were paid less than the wage promised to them by the Las Princesas Defendants under their working arrangement.

286.    Plaintiffs Hernández Lara, Lorenzo Perez, and Santiago Gómez others similarly situated assert this claims for violations of the wage payment requirements of the

AWPA, 29 U.S.C. § 1822(a) for the Las Princesas Defendants' failure to pay Plaintiffs and others similarly-situated all wages owed when due.

287.     Defendants further violated the AWPA by failing to pay Plaintiffs and others similarly-situated their wages as required by the H-2A contract, H-2A program rules, and/or the FLSA.

288.     The Plaintiffs and other members of the AWPA class had a working arrangement with the Las Princesas Defendants which was contained in their applicable H-2A job orders.

289.     The Las Princesas Defendants, without adequate justification, violated the working arrangement when they lowered Plaintiffs' pay, and the pay of others similarly situated, below the AEWR, the wage they had promised to pay.

290.     The Las Princesas Defendants violated the working arrangements provision of the AWPA found at 29 U.S.C. § 1821(c) for which Plaintiffs are entitled to their actual or statutory damages whichever is greater.

291.     Pursuant to 29 U.S.C. § 1854(c), as a result of Defendants' violations of the AWPA set forth in this Count, the Plaintiffs are entitled to recover statutory damages of up to $500 per Plaintiff per violation or actual damages, whichever is greater.

### SEVENTH CAUSE OF ACTION
### NORTH CAROLINA WAGE AND HOUR ACT
### (CLASS CLAIMS BY PLAINTIFFS HERNÁNDEZ LARA, LORENZO PEREZ, AND SANTIAGO GOMEZ ON BEHALF OF THE NORTH CAROLINA CLASS)
### (Against Las Princesas and Martha Zeferino Jose)

292.     Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

293.     The Las Princesas Defendants failed to pay Plaintiffs Santiago Gomez,

Hernández Lara, and Lorenzo Perez and the members of the NCWHA classes at least the promised wage and each hour or part of an hour that they worked for these Defendants for each workweek, in violation of N.C. Gen. Stat. § 95-25.6.

294.      The promised wage for the Plaintiffs and members of the North Carolina Class was the effective AEWR as set forth in the chart above.

295.      The violations of the NCWHA resulted, in part, from the Las Princesas Defendants' failure to reimburse Plaintiff Santiago Gómez and members of the NCWHA Reimbursement Class during their first week of employment for expenses incurred primarily for the benefit of Defendants, including recruitment fees, inbound subsistence costs, lodging expenses near the U.S. Consulate, visa fees and visa-related processing fees, issuance of Form I-94, and the full cost of travel from their homes to the Las Princesas Defendants' jobsite. When these expenses are calculated as deductions from their first week's pay, as required by law, they cause Plaintiffs' and the North Carolina Class members' first week's earnings to be less than the AEWR promised to them.

296.      The violations of the NCWHA also resulted from the Las Princesas Defendants' failure during various weeks to compensate Plaintiffs Hernández Lara, Lorenzo Perez, and Santiago Gómez and members of the NCWHA Promised Wage Class at the AEWR for all hours worked when they required them to pay kickbacks for illegal meal charges.

297.      As a result of these actions, the Las Princesas Defendants are in violation of the rights of the Plaintiffs and the members of the NCWHA classes under N.C. Gen. Stat. §§ 95-26.6. Plaintiffs and class members have suffered damages in the form of unpaid wages and liquidated damages that may be recovered from the Las Princesas Defendants, jointly and severally, under N.C. Gen. Stat. §§ 95-25.22(a) and 95-25.22(a)(1).

## EIGHTH CAUSE OF ACTION
## VIRGINIA WAGE PAYMENT ACT (VWPA), VA. CODE ANN. §§ 40.1-29
## (CLASS CLAIM BY PLAINTIFFS HERNÁNDEZ LARA, LORENZO PEREZ, AND HERNÁNDEZ ESPINOZA)
## (Against All Defendants)

298.    Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

299.    Plaintiffs Hernández Lara, Hernández Espinoza, and Lorenzo Perez bring this claim on behalf of themselves and the VWPA Class.

300.    The VWPA requires all employers to pay hourly workers "at least once every two weeks or twice in each month." Va. Code § 40.1-29(A).

301.    The VWPA also prohibits employers from withholding "any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee." Va. Code § 40.1-29(C).

302.    The promised wage for the Plaintiffs and members of the Virginia Class was the effective AEWR as set forth in the chart above.

303.    Defendants had a policy of not paying Plaintiffs Hernández Lara, Hernández Espinoza, and Lorenzo Perez and the members of the VWPA Class for all hours worked owing to failure to reimburse expenses and illegal meal charges. Defendants have refused to pay the required wages.

304.    The violations of the VWPA resulted, in part, from the Defendants' failure to reimburse Plaintiffs and members of the Virginia Class during their first week of employment for expenses incurred primarily for the benefit of Defendants, including recruitment fees, inbound subsistence costs, lodging expenses near the U.S. Consulate, visa

fees and visa-related processing fees, issuance of Form I-94, and the full cost of travel from their homes to the jobsite. When these expenses are calculated as deductions from their first week's pay, as required by law, they cause Plaintiffs' and the Virginia Class members' first week's earnings to be less than the AEWR promised to them.

305.    The violations of the VWPA also resulted from the Defendants' failure during various weeks to compensate Plaintiffs Hernández Lara, Hernández Espinoza, and Lorenzo Perez and the members of the VWPA Class at the AEWR for all hours worked when they required them to pay kickbacks for illegal meal charges.

306.    Defendants' actions violate the VWPA.

307.    Defendants' violations of the VWPA were knowing, willful, and not in good faith, as evidenced by their knowledge through complaints to their agents that Plaintiffs Hernández Lara, Hernández Espinoza, and Lorenzo Perez and members of the VWPA Class were not being paid for work performed.

308.    By failing to pay Plaintiffs and the VWPA Class Members for every hour of their work, Defendants violated the Virginia Wage Payment Act and are liable to them in the amount of their unpaid wages earned and due, double or treble liquidated damages, reasonable attorneys' fees, and the costs of suit pursuant to Va. Code § 40.1-29(J)-(K).

**NINTH CAUSE OF ACTION**
**VIRGINIA OVERTIME WAGE ACT, VA. CODE ANN. §§ 40.1-29.2**
**(CLASS CLAIM BY PLAINTIFFS HERNÁNDEZ LARA AND LORENZO PEREZ)**
**(Against All Defendants)**

309.    Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

310.    On July 1, 2021, the General Assembly enacted Va. Code § 40.1-29.2, the Virginia Overtime Wage Act ("VOWA"), which expressly defined "employee" as

[A]ny individual employed by an employer, including employees of derivative carriers within the meaning of the federal Railway Labor Act, 45 U.S.C. § 151 *et seq.* 'Employee' does not include the following: (i) any individual who volunteers solely for humanitarian, religious, or community service purposes for a public body, church, or nonprofit organization that does not otherwise employ such individual, (ii) ***any person who is exempt from the federal overtime wage pursuant to 29 U.S.C. § 213(a),*** and (iii) any person who meets the exemptions set forth in 29 U.S.C. § 213(b)(1) or 213(b)(11).

**Exhibit 2.** (Emphasis added)

311.    29 U.S.C. § 213(a)(6) is a subsection of the Fair Labor Standards Act ("FLSA") that relates to a subset of farmworkers, excluding from both minimum wage and overtime protections agricultural workers who are "employed by an employer who did not, during any calendar quarter during the preceding calendar year, use more than five hundred man-days of agricultural labor."[1]   A "man-day" means any day during which an employee performs any agricultural labor for not less than one hour. 29 U.S.C. § 203(u).

312.    However, notably VOWA ***did not*** mirror the FLSA, which in 29 U.S.C. § 213(b)(12) additionally excludes all remaining agricultural workers from overtime, including those who worked on farms using more than five-hundred man-days of agricultural labor. 29 U.S.C. § 213(b)(12) was not incorporated into VOWA.[2]

313.    Va. Code § 40.1-29(J) provides Plaintiffs Hernández Lara, Lorenzo Perez, and other similarly situated employees with a private right of action to bring overtime claims for all hours worked in excess of forty hours per week.

---

[1] The exemption also includes other plainly irrelevant subsets of workers. *See* 29 U.S.C. §§ 213(a)(6)(B)-(E).

[2] In 2022, the General Assembly amended VOWA, effective July 1, 2022, to conform in full with FLSA's overtime provisions, thereby incorporating the exemption found in 29 U.S.C. § 213(b)(12) and removing agricultural workers' right to overtime under VOWA for hours worked beginning on July 1, 2022.

314.    During some weeks between July 1, 2021, and June 30, 2022, Mr. Lara Hernández, Mr. Lorenzo Perez, and similarly situated workers regularly worked more than forty hours per week.

315.    Defendants were aware that Mr. Hernández Lara, Mr. Lorenzo Perez, and other workers worked more than forty hours.

316.    Mr. Hernández Lara, Mr. Lorenzo Perez, and other similarly situated workers did not receive any overtime premium for their hours worked over forty in a workweek.

317.    Between July 1, 2021, through June 30, 2022, Defendants violated Va. Code § 40.1-29.2 by failing to pay Mr. Hernández Lara, Mr. Lorenzo Perez, and members of the VOWA Class, an overtime premium for all hours worked in excess of forty hours thereby depriving Mr. Hernández Lara, Mr Lorenzo Perez, and others who were subject to the same policies, of wages at an overtime pay rate(s) of his wage plus a one-half (1/2) premium.

318.    Defendants knew that Mr. Hernández Lara, Mr. Lorenzo Perez, and members of the VOWA Class were not paid overtime wages for all hours worked in excess of forty hours. Defendants knowingly and willfully failed to pay them all overtime wages due, such that treble damages are appropriate.

319.    By failing to pay Plaintiff Hernández Lara, Mr. Lorenzo Perez, and the VOWA Class he asks to represent their lawfully owed overtime premium for every hour worked in excess of forty hours in any given workweek, Defendant violated VOWA in respect to the Plaintiffs and the class they represent to the injury of Plaintiffs' and the class they represent and are liable to them in damages. Pursuant to Va. Code § 40.1-29(J), Plaintiff and putative VOWA Class members are entitled to their unpaid overtime wages due, double or

treble liquidated damages, the costs of suit, and reasonable attorneys' fees.

## TENTH CAUSE OF ACTION
## BREACH OF CONTRACT UNDER VIRGINIA COMMON LAW
### (CLASS CLAIM ON BEHALF OF THE VIRGINIA CLASS)
### (Against all Defendants)

320.     Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

321.     This Count sets forth the claims of Plaintiffs Hernández Lara, Hernández Espinoza, and Lorenzo Perez for declaratory relief and damages for Defendants' breach of multiple provisions contained in their employment contracts, including but not limited to the rate of pay provisions, transportation provisions, assurances provision, and the terms set forth above, which created a contractual promise to pay these Plaintiffs and others similarly situated the highest of the applicable FLSA wage or AEWR for each compensable hour of work in a workweek and which promised transportation and subsistence from the place from which the worker came.

322.     Defendants, through their agents, offered employment on the terms and conditions set out in the 2021 and 2022 job orders as described above.

323.     Plaintiffs Hernández Lara, Hernández Espinoza, and Lorenzo Perez and others similarly-situated accepted Defendants' offers.

324.     Defendants breached their H-2A employment contracts with the Plaintiffs Hernández Lara, Hernández Espinoza, and Lorenzo Perez and others similarly-situated by failing to pay them at least the higher of the applicable FLSA or AEWR wage for each compensable hour of work in a workweek, as set forth above.

325.     Defendants breach included failing to reimburse travel and subsistence expenses incurred prior to the first work week in each season.

326.     Defendants also breached their H-2A employment contracts with Plaintiffs Hernández Lara, Hernández Espinoza, and Lorenzo Perez and others similarly situated by failing to reimburse them, at the fifty percent (50%) point of their employment contracts, for all inbound transportation and subsistence expenses not previously reimbursed.

327.     Defendants also breached their H-2A employment contracts by requiring Plaintiffs and members of the VA Contract Class to kick back part of their wages for meals at a price that exceeded the rate under the contract.

328.     As a direct consequence of Defendants' breaches as set forth in this Count, the Plaintiffs and others similarly situated have suffered damages.

329.     Defendants are liable to the Plaintiffs Hernández Lara, Hernández Espinoza, and Lorenzo Perez and a class of similarly-situated individuals for lost wages and money paid improperly for recruitment, visa, and travel (including transportation, lodging, and subsistence), for which Plaintiffs and the putative class members are entitled to actual and consequential damages, costs, and prejudgment interest at a rate of six percent (6%) pursuant to Va. Code § 6.2-302 and § 17.1-601.

### ELEVENTH CAUSE OF ACTION
### BREACH OF CONTRACT UNDER NORTH CAROLINA COMMON LAW
### (CLASS CLAIM BY PLAINTIFFS HERNÁNDEZ LARA, LORENZO PEREZ, AND SANTIAGO GOMEZ)
### (Against Las Princesas and Martha Zeferino José)

330.     Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

331.     This Count sets forth the claims of Plaintiffs Hernández Lara, Lorenzo Perez, and Santiago Gómez and the NC Contract Class for declaratory relief and damages for Defendants' breach of multiple provisions contained in their employment contracts, including

but not limited to the rate of pay provisions, transportation provisions, and assurances provision contained in their employment contracts, including the terms set forth above, which created a contractual promise to pay this Plaintiff and members of the NC Contract Class the highest of the applicable FLSA wage or AEWR for each compensable hour of work in a workweek and which promised transportation and subsistence from the place from which the worker came.

332.    Plaintiffs Hernández Lara, Lorenzo Perez, and Santiago Gómez and others similarly situated assert this claim for the 2021 and 2022 seasons.

333.    Defendants, through their agents, offered employment on the terms and conditions set out in those job orders as described above.

334.    Plaintiffs and others similarly situated accepted Defendants' offers.

335.    Defendants breached their H-2A employment contracts with Plaintiffs and others similarly situated by failing to pay them at least the higher of the applicable FLSA or AEWR wage for each compensable hour of work in a workweek, as set forth above.

336.    Defendants' breach included failing to reimburse travel and subsistence expenses incurred prior to the first work week in each season.

337.    Defendants also breached their H-2A employment contracts with the Plaintiff Santiago Gómez and others similarly situated by failing to reimburse them, at the fifty-percent point of their employment contracts, for all inbound transportation and subsistence expenses not previously reimbursed.

338.    As a direct consequence of Defendants' breaches as set forth in this Count, Plaintiff Santiago Gómez and others similarly situated have suffered damages.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter an Order:

a.      Assuming jurisdiction over this action;

b.      Declaring this action to be maintainable as a FLSA collective action as to Count V pursuant to 29 U.S.C. § 216, allowing Plaintiffs to provide notice of this action to potential opt-in plaintiffs, and allowing those individuals who choose to do so to opt-in to this action;

c.      Certifying this case as a class action under Fed. R. Civ. P. 23 as to Counts I, III, VI, VII, VIII, IX, X, and XI, naming Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel;

d.      Declaring that the Defendants violated the TVPRA (Counts I & II); the North Carolina Trafficking Law (Counts III & IV); the FLSA (Count V); the Migrant and Seasonal Agricultural Worker Protection Act (Count VI); the NC Wage and Hour Act (Count VII); and the Virginia Wage Payment Act and Virginia Overtime Wage Act (Counts VIII and IX);

e.      Permanently enjoining Defendants from further violations of the TVPRA, the North Carolina Trafficking Law; the Migrant and Seasonal Agricultural Worker Protection Act, the NC Wage and Hour Act, and the Virginia Wage Payment Act;

f.      Granting judgment to Plaintiffs and the members of the Trafficking Class and awarding them damages as provided for by statute;

g.      Granting judgment to Plaintiffs Hernández Lara, Lorenzo Perez, and Santiago Gomez and the members of the NC Trafficking Class and awarding them damages as provided for by statute;

h.      Granting judgment to Plaintiffs and workers who opt into this action pursuant to 29 U.S.C. § 216(b) on their FLSA claims and awarding each of them their unpaid wages plus an equal amount in liquidated damages;

i.      Granting judgment to Plaintiffs Hernández Lara, Lorenzo Perez, and Santiago

Gomez and the members of the AWPA class and awarding them damages as provided for by statute;

      j.      Granting judgment to Plaintiffs Hernández Lara, Lorenzo Perez, and Santiago Gomez and the members of the NCWHA Reimbursement Class and the NCWHA Promised Wage Class on their North Carolina Wage and Hour Act claims and awarding them damages as provided for by statute;

      k.      Granting judgment to Plaintiffs Hernández Lara, Lorenzo Perez, and Hernández Espinoza and the members of the VWPA Class on their Virginia Wage Payment Act claim and awarding them damages as provided for by statute;

      l.      Granting judgment to Plaintiff Hernández Lara, Mr. Lorenzo Perez, and the members of the VOWA Class on their Virginia Overtime Wage Act claim and awarding them damages as provided for by statute.

      m.      Granting judgment to the Plaintiffs and the members of the North Carolina Contract Class and the Virginia Contract Class and awarding them damages for the contract breaches;

      n.      Awarding Plaintiffs and the class members prejudgment and post-judgment interest as allowed by law;

      o.      Awarding Plaintiffs and the class members their costs and reasonable attorneys' fees; and

      p.      Granting such further relief as the Court finds just.

Respectfully submitted this 29th day of May 2024,

                          PLAINTIFFS,
                          Individually on behalf of themselves and on behalf
                          of all others similarly situated
                          By Counsel

/s/ Rachel C. McFarland
Rachel C. McFarland  (VSB No. 89391)
Marisa L. Baer (VSB No. 96258)
Jason B. Yarashes (VSB No. 90211)
**LEGAL AID JUSTICE CENTER**
1000 Preston Avenue, Suite A
Charlottesville, Virginia 22903
Telephone: (434) 977-0553
Facsimile: (434) 977-0558
Email: rmcfarland@justice4all.org
        marissa@justice4all.org
        jasony@justice4all.org

Carol Brooke
Clermont Ripley
**NORTH CAROLINA JUSTICE CENTER**
P.O. Box 28068
Raleigh, NC  27611
Telephone: (919) 856-2144
Facsimile: (919) 856-2175
Email: carol@ncjustice.org
        clermont@ncjustice.org
*(Pro hac vice applications to be submitted)*

Patricia Kakalec
**KAKALEC LAW PLLC**
80 Broad Street, Suite 703
New York, NY 10004
Telephone: (212) 705-8730
Facsimile: (646) 759-1587
Email: Patricia@KakalecLaw.com
*(Pro hac vice application to be submitted)*

***Attorneys for Representative Plaintiffs and
Putative Collective/Class Members***